**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:

                                     Chapter 7

EVERTON ALOYSIUS STERLING,

                      Debtor.              Case No. 14-12608 (SHL)

-------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

**A P P E A R A N C E S :**

**LAW OFFICES OF DAVID CARLEBACH, ESQ.**
*Counsel to 1279 St. John's Place, LLC*
55 Broadway, Suite 1902
New York, New York 10006
  By:  David Carlebach, Esq.
        Eva R. Horowitz, Esq.

**EVERTON ALOYSIUS STERLING**
*Pro Se*
c/o General Post 341
Bronx, New York 10469-9998

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the motion of 1279 St. John's Place, LLC (the "Movant") to lift the

automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code (the "Lift Stay Motion")

[ECF No. 40] as to three properties located at 551 Knickerbocker Avenue, Brooklyn, NY (the

"Brooklyn Property"), 1320 East 222 Street, Bronx, NY (the "Bronx Property"), and N/A East

222 Street, Block and Lot 4730/7, Bronx, NY (the "Bronx Lot" and together with the Brooklyn

Property and the Bronx Property, the "Properties").  The Lift Stay Motion also seeks *in rem*

relief against the Properties pursuant to Section 362(d)(4)(A) of the Bankruptcy Code.  In

response, the Debtor has filed a request for injunctive relief against the Movant (the "Preliminary

Injunction Motion") [ECF No. 42].[1]  For the reasons set forth below, the Movant's request to lift the automatic stay is granted, but *in rem* relief is denied.  Mr. Sterling's Preliminary Injunction Motion is also denied.[2]

## BACKGROUND

On December 23, 2011, Mr. Sterling executed a note in favor of Columbia Capital Co. in the amount of $190,000.00 (the "Brooklyn Note").  *See* Ex. A to the Lift Stay Motion.  The Note was secured by the Brooklyn Property, pursuant to a mortgage executed by Mr. Sterling on December 23, 2011 (the "Brooklyn Mortgage").  *See* Ex. B to the Lift Stay Motion.  On August 20, 2012, the Brooklyn Mortgage was assigned by Columbia Capital Co. to 222 Funding Associates, the Movant's predecessor-in-interest.  *See* Ex. C to the Lift Stay Motion. Additionally, an allonge is attached to the Brooklyn Note paying to the order of 222 Funding Associates and signed by Columbia Capital Co.  *See* Ex. A to the Lift Stay Motion.

On August 23, 2012, Mr. Sterling, in his role as President of Latou Realty Corp. ("Latou"), executed a note in favor of 222 Funding Associates in the amount of $275,000.00, (the "Second Note").  *See* Ex. D to the Lift Stay Motion.  The Second Note was secured by each of the three Properties, pursuant to a mortgage executed on August 23, 2012 by Mr. Sterling, as President of Latou (the "Second Mortgage").  *See* Ex. E to the Lift Stay Motion.  An allonge is attached to the Second Note paying to the order of 1279 St. Johns Place LLC and signed by 222 Funding Associates.  *See* Ex. D to the Lift Stay Motion.

---

[1]    Mr. Sterling has also filed a motion to strike the Lift Stay Motion (the "Motion to Strike") [ECF No. 45], which the Court treats as an objection to the Lift Stay Motion.

[2]    On December 2, 2015, several weeks after the various hearings on the Lift Stay Motion and Preliminary Injunction Motion, Mr. Sterling filed a motion for this Court to recuse itself from the above-captioned bankruptcy case (the "Recusal Motion") [ECF No. 63].  The Recusal Motion has not been fully briefed and a hearing has not yet been set.  Mindful of the mandate to promptly decide motions to lift the automatic stay, *see* 11 U.S.C. § 362(e), this Court now decides the Lift Stay Motion and the related Preliminary Injunction Motion without waiting for the Recusal Motion to be ripe.  The Recusal Motion will be decided in the ordinary course.

On August 23, 2012, the Brooklyn Note and the Second Note were consolidated into the principal sum of $465,000.00 (the "Consolidated Note").  *See* Ex. F to the Lift Stay Motion.  On the same date, Mr. Sterling, as President of Latou, consolidated the Brooklyn Mortgage and the Second Mortgage in favor of 222 Funding Associates by executing a consolidation modification spreader agreement on all of the Properties (the "Consolidated Mortgage").  *See* Ex. G to the Lift Stay Motion.  To facilitate the execution of the Consolidated Note and the Consolidated Mortgage, on August 23, 2012, Mr. Sterling deeded all of the Properties to Latou.  *See* Exs. H and I to the Lift Stay Motion.

On November 1, 2012, Latou defaulted on the Consolidated Mortgage.  222 Funding Associates subsequently filed a foreclosure action against the Bronx Property and Bronx Lot in Bronx Civil Supreme Court (the "State Court"), entitled *222 Funding v. Latou Realty*, Index No. 380272/2013 (the "Foreclosure Action").  But on November 26, 2013—on the eve of a pending motion for the entry of a judgment of foreclosure and sale—Latou deeded the Properties back to Mr. Sterling.  *See* Exs. L and M to the Lift Stay Motion.  The Movant asserts that these transfers were initiated in an attempt to hinder and delay the Foreclosure Action, and were undertaken without the consent or knowledge of 222 Funding Associates.

On June 6, 2014, 222 Funding Associates assigned the Consolidated Mortgage to the Movant, 1279 St. John's Place, LLC.  *See* Ex. J to Lift Stay Motion.[3]  Additionally, an allonge is attached to the Consolidated Note that provides for "pay[ment] to the order of 1279 St. Johns Place LLC . . . without recourse, representation, or warranties of any nature."  Ex. F to the Lift

---

[3]    A judgment of foreclosure and sale for the Bronx Property and the Bronx Lot was granted on February 28, 2014 (the "Foreclosure Judgment"), but that judgment appears to have been rescinded for reasons not relevant to the pending motions.  *See* Ex. C to the Affidavit in Support of Order to Show Cause for Preliminary Injunction [ECF No. 42], attaching documents pertaining to the request to vacate the Foreclosure Judgment; *see also* Lift Stay Motion ¶ 28; Oct. 27, 2015 Hr'g Tr. 18:6-10 [ECF No. 58].

Stay Motion.  This allonge was signed by 222 Funding Associates.  *See id.*  The above-captioned

bankruptcy case was filed by Mr. Sterling on September 14, 2014.

## DISCUSSION

### I.    Motion to Lift the Automatic Stay

The Movant seeks relief from the automatic stay pursuant to Section 362(d)(1), which

provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing,

the court shall grant relief from the stay. . . for cause, including the lack of adequate protection of

an interest in property of such party in interest. . . ." 11 U.S.C. § 362(d)(1).  The Movant argues

that it lacks adequate protection due to the failure of Mr. Sterling to make any post-petition

payments on the Properties and to pay real estate taxes on the Properties.  Mr. Sterling, in turn,

challenges the standing of the Movant to seek relief from the automatic stay.

A.    Standing to Seek Relief from the Automatic Stay

"[G]ranting or denying a stay relief motion is not and should not be considered a

determination of the ultimate enforceability or unenforceability of the note and lien at issue.

Conversely, a lift stay motion cannot be brought by a stranger to the case." *In re Escobar*, 457

B.R. 229, 236 (Bankr. E.D.N.Y. 2011).  It therefore becomes necessary for courts to strike a

balance when determining whether a movant has standing to lift the automatic stay.  "Thus, the

level of proof necessary to demonstrate standing to seek stay relief to commence or continue a

mortgage foreclosure action must be somewhere along the spectrum of providing some evidence

of a litigable right or colorable claim at one end, to, at the other end, demonstrating that the

movant holds a valid, perfected and enforceable lien and more likely than not will prevail in the

underlying litigation stayed by the bankruptcy filing." *Id.* at 237.

Under Section 362(d), a request to lift the automatic stay must be made by "a party in interest." *See In re Lippold*, 457 B.R. 293, 296 (Bankr. S.D.N.Y. 2011). While the term "party in interest" is not defined by the Bankruptcy Code, the Second Circuit has stated that "in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party [must] be either a creditor or a debtor." *In re Mims*, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010) (citing *In re Comcoach*, 698 F.2d 571, 573 (2d Cir. 1983)). Section 101(10) of the Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A "claim" is, in turn, defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). Courts in this jurisdiction have stated that a party can demonstrate a right to payment by showing that it holds the ability to seek the state law remedy of foreclosure. *See Mims*, 438 B.R. at 56 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor)); *see also Escobar*, 457 B.R. at 239 ("[T]he evidence necessary to establish standing to seek stay relief to commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable state law to enforce the mortgage; however, standing should not require evidence which would be necessary to prevail over a claim objection or to prevail in an adversary proceeding asserting that the claimant does not hold a valid, perfected and enforceable lien.").

"Under New York law, a plaintiff has standing to commence a mortgage foreclosure action 'where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced.'" *Lippold*, 457 B.R. at 296-97

5

(quoting *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d 532, 536 (App. Div. 2d Dep't 2011)). "While the transfer of the mortgage without the promissory note is a nullity, once a promissory note is transferred from assignor to assignee, 'the mortgage passes as an incident to the note.'" *Lippold*, 457 B.R. at 297 (quoting *Silverberg*, 926 N.Y.S.2d at 537); *see also Escobar*, 457 B.R. at 240 ("New York law has long recognized that the rights under a mortgage lien are beneficially transferred to the assignee of a promissory note, without the execution of a written assignment of the mortgage, and even without a written assignment of the mortgage.").

"Under New York law, [a] Movant can prove that [it] is the holder of the Note by providing the Court with proof of a written assignment of the Note, or by demonstrating that [it] has physical possession of the Note endorsed over to it." *Escobar*, 457 B.R. at 240 (quoting *In re Agard*, 444 B.R. 231, 246 (Bankr. E.D.N.Y. 2011)); *see also Mims*, 438 B.R. at 56. Proper endorsement of a note can be accomplished through an allonge firmly affixed to the Note. *See Deutsche Bank Trust Co. Ams. v. Codio*, 943 N.Y.S.2d 545, 546 (App. Div. 2d Dep't 2012); *see also HSBC Bank USA v. Thomas*, 999 N.Y.S.2d 671, 674 (Sup. Ct. Kings County 2014) ("The endorsement must be made either on the face of the note or on an allonge so firmly affixed to the note as to become a part thereof.") (citing U.C.C. Section 3-202(2)).

The Movant has attached a copy of the Consolidated Mortgage and the Consolidated Note as Exhibits G and F, respectively, to its papers. It also produced the original of the Consolidated Note at a hearing held on November 24, 2015. Based on personal inspection of these original documents, the Court verified at that hearing that the allonge is firmly affixed to the Consolidated Note and bore an original ink signature. The allonge, which is executed by James K. Coleman, a Partner of 222 Funding Associates, states that the Consolidated Note is to be "pa[id] to the order of 1279 St. Johns Place LLC, a New York limited liability company, . . .

6

without recourse, representation, or warranties of any nature." *See* Ex. F to Lift Stay Motion.

Accordingly, the Court concludes that the Movant has standing to seek to lift the automatic stay

as to the Properties. *Escobar*, 457 B.R. at 240-41 (granting standing where "each movant has

demonstrated physical possession of the original Notes, each endorsed in blank, in addition to

physical possession of the original Mortgages."). At the November 24, 2015 hearing, the

Movant also produced the Brooklyn Note and the Second Note, and the Court verified that the

respective allonges were affixed to these notes and bore original ink signatures.[4]

Mr. Sterling requests numerous items in discovery. But Mr. Sterling has not identified

any legitimate issue of fact that would warrant discovery, and the Court will not permit him to

seek discovery in these circumstances based on mere speculation. *See Green Tree Servicing*

*LLC v. Christodoulakis*, 2015 WL 5719808, at *11 (E.D.N.Y. Sept. 29, 2015) ("[D]efendants

have not identified any specific discovery that remains outstanding that would reasonably be

expected to raise a genuine issue of material fact with respect to plaintiff's claim against Olga to

recover on the Note. . . . Defendants' contention that additional discovery would help determine

whether plaintiff was a 'holder in due course,' . . . is misplaced, since, absent a valid defense, an

entity need only be a mere holder of a promissory note indorsed 'in blank' in order to enforce

payment thereunder, and need not be a holder in due course."); *c.f. Tennenbaum Capital*

*Partners LLC v. Kennedy*, 2009 U.S. Dist. LEXIS 72568, at *16-17 (S.D.N.Y. Aug. 14, 2009)

(stating with respect to discovery request under Rule 56(f) that "Defendant proffers no good faith

---

[4]    At the hearing held on October 27, 2015 and in his reply papers submitted on November 18, 2015 [ECF No. 59], Mr. Sterling raised arguments regarding the assignment of the Consolidated Mortgage. Mr. Sterling specifically noted that the signature on the assignment is dated June 6, 2014, while the notarization of that signature is dated June 5, 2014, one day earlier. *See* Oct. 27 Hr'g Tr. 10:2-19 [ECF No. 58]; *see also* Assignment of Mortgage [ECF No. 49]. Mr. Sterling argues that the assignment is therefore fraudulent. Oct. 27 Hr'g Tr. 10:2-19. While the Court understands Mr. Sterling's concern, this does not impact the standing of the Movant, because, under New York law "once a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note." *Escobar*, 457 B.R. at 239 (citing cases).

basis for belief that discovery would produce any information contrary to Plaintiff's declarations and the Court will not permit Defendant to engage in a fishing expedition based on mere speculation."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 713, 725 (Bankr. S.D.N.Y. 2013) ("Rule 26 discovery requests should not be 'based on pure speculation or conjecture,' and many courts have 'routinely declined to authorize fishing expeditions.'") (quoting *Surles v. Air France*, 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001)).  Furthermore, the Court is not required to hold a full-blown evidentiary hearing on a motion to lift the automatic stay where it is unnecessary to do so.  *See Intelligent Mailing Solutions, Inc. v. Ascom Hasler Mailing Sys., Inc.*, 2006 U.S. Dist. LEXIS 6488, at *18-19 (N.D. Ohio Feb. 21, 2006); *Global Cable, Inc. v. Adelphia Commc'ns. Corp. (In re Adelphia Commc'ns. Corp.)*, 2006 U.S. Dist. LEXIS 37112, at *14-15 (S.D.N.Y. Apr. 7, 2004).

### B.   Cause for Lifting the Automatic Stay

Having found that the Movant has standing to assert the Lift Stay Motion, the Court turns to the merits of the motion.  Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay. . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . ." 11 U.S.C. § 362(d)(1).

The Movant argues that it lacks adequate protection due to the failure of Mr. Sterling to make post-petition payments.  "[T]he failure to make mortgage payments constitutes 'cause' for relief from the automatic stay and is one of the best examples of a 'lack of adequate protection' under Section 362(d)(1) of the Bankruptcy Code."  *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008); s*ee also Campora v. HSBC Bank USA, N.A. (In re Campora)*, 2015 U.S. Dist. LEXIS 117862, at *17 (E.D.N.Y. Sept. 3, 2015) ("A debtor's failure to make post-petition

mortgage payments constitutes sufficient cause to modify an automatic stay."); *In re Elmira Litho, Inc.*, 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994) ("Without quantifying the decline in value, the creditor can often establish its *prima facie* case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments."). In this case, no payments of any kind have been made on the Consolidated Mortgage for three years. *See* Oct. 27, 2015 Hr'g Tr. 5:19-24 (counsel to Movant arguing that adequate protection is lacking because there have been no payments on the mortgage for over three years); Decl. of 1279 St. John's Place, LLC ¶ 2 [ECF No. 62]; Lift Stay Motion ¶ 31. The Movant states that as of the date of the bankruptcy filing, the arrears on the Properties were $229,192.73, over and above the principal amount of $465,000.00, for a total of $694,192.73. *See* Lift Stay Motion ¶¶ 8, 31. This does not include arrears accrued subsequent to the filing, which the Movant states are in excess of $100,000.00. *See* Lift Stay Motion ¶ 31; *c.f.* Decl. of 1279 St. John's Place, LLC ¶ 2. The Movant also states that real estate taxes have not been kept up to date on the Properties since the filing of the bankruptcy. *See* Lift Stay Motion ¶ 31. Mr. Sterling does not appear to contest that no payments have been made on the Properties, that taxes are not being paid, or that the Movant is, in fact, not adequately protected.[5]

Moreover, when determining whether "cause" exists to lift the stay for pre-petition litigation, courts in this jurisdiction consider the following factors (the "*Sonnax* Factors"):

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action

---

[5]     When first questioned by the Court on whether any payments had been made in the last three years, Mr. Sterling did not directly answer the question. *See* Oct. 27 Hr'g Tr. 12:18-13:24 [ECF No. 58]. When the Court again asked if payments had been made to anyone, including 222 Funding Associates, Mr. Sterling responded "not to [his] knowledge. . . ." *Id*. at 13:25-14:11. In any event, Mr. Sterling has not submitted evidence of payments on the properties or evidence of payment of the real estate taxes.

(5) whether the debtor's insurer has assumed full responsibility for defending [the action];

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) the impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich (In re Bogdanovich),* 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 143 (2d Cir. 1999)).

The Court finds that the majority of the *Sonnax* Factors that are applicable to this case support lifting the automatic stay so that the Movant can proceed with the Foreclosure Action. Specifically, lifting the stay to proceed with the Foreclosure Action will result in a resolution of the issues relating to the Properties and will not significantly interfere with the bankruptcy case, which is being administered by a Chapter 7 Trustee. The State Court also has the expertise to address the foreclosure issues. *See, e.g., In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3726, at *20 (Bankr. S.D.N.Y. Aug. 14, 2012) (noting that state court is in the best position to address state law defenses to foreclosure). Most importantly, the interests of judicial economy will be met by lifting the stay and moving forward in the State Court. *See, e.g., In re Cicale*, 2007 Bankr. LEXIS 2252, at *12 (Bankr. S.D.N.Y. June 29, 2007) (noting that allowing litigation to proceed in the state court "will provide the most efficient and economical resolution

10

of the litigation because the . . . action may alleviate the need for any further proceedings in the bankruptcy court.").  Additionally, the balance of the harms tips in the Movant's favor, due to a lack of post-petition payments and failure to pay real estate taxes on the Properties.  *See, e.g., Thompson v. JP Morgan Chase Bank, N.A. (In re Thompson)*, 2012 U.S. Dist. LEXIS 30980, at *19-20 (E.D.N.Y. Mar. 8, 2012) (in considering the *Sonnax* Factors, finding cause where the debtor was not making mortgage payments, secured creditor had begun foreclosure proceedings in state court, and secured creditor continued to expend money for taxes and insurance on the property in question).

   C.  *In Rem* Relief

   The Movant also requests that the Court grant *in rem* relief with respect to the Properties pursuant to Section 362(d)(4) of the Bankruptcy Code, arguing that this bankruptcy filing is part of an improper scheme to hinder or delay its rights as a creditor.  Section 362(d)(4)(A) of the Bankruptcy Code provides, in pertinent part, as follows:

> (d) [T]he court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating . . . such stay—

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . —

> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval . . .

> If recorded in compliance with applicable State laws governing notices of interests or liens in real property,  an order entered under paragraph (4) shall be binding in  any other case under this title purporting to affect such  real property filed not later than 2 years after the date of  the entry of such order by the court, except that a debtor  in a subsequent case under this title may move for relief  from such order based upon changed circumstances or for good cause shown, after notice and a hearing.

11 U.S.C. § 362(d)(4)(A).

This section was added by the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005 and was "intended to reduce abusive filings." *In re 177 Weston Rd., LLC*, 2011 Bankr. LEXIS 2848, at *4 (Bankr. D. Conn. July 22, 2011). The burden of proof is on the Movant to show "that the filing of the petition was part of a scheme to delay, hinder, or defraud it, which involved a transfer of the [p]roperty without its consent." *Id.*

"'Scheme' is not defined by the Bankruptcy Code, but it is commonly defined to be: '(1) a systemic plan; a connected or orderly arrangement, esp. of related concepts . . . . (2) An artful plot or plan, usu. to deceive others.'" *Id.* (quoting Black's Law Dictionary 1462 (9th ed. 2009)). "In other words, a scheme warranting § 362(d)(4) relief implies a level of insidiousness or deceitfulness." *Id.* at * 5; *see also In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006) ("A scheme is an intentional construct. It does not happen by misadventure or negligence."). Furthermore, "the use of the conjunctive in 'delay, hinder, and defraud' requires proof that the scheme served all three purposes." *In re Abdulla*, 2009 Bankr. LEXIS 642, at *4 (Bankr. D. Mass. Feb. 6, 2009).

To support its request for *in rem* relief, the Movant argues that Mr. Sterling facilitated the transfer of the deeds on the Properties from Latou to himself, without the consent or knowledge of 222 Funding Associates, and that this was done during the pendency of the Foreclosure Action where Latou was a defendant. The Movant notes that the Consolidated Mortgage was not transferred to Mr. Sterling when the properties were transferred to him in 2013. The Movant argues that this demonstrates that the deed transfers were conducted without the consent or knowledge of the Movant's predecessor-in-interest, since allowing the transfer of a secured property to a third party, without the concurrent transfer of the mortgage securing the property to the new deed holder, is counter to a secured creditor's interest, and a violation of the terms of the

Consolidated Mortgage.  The Movant also points to Mr. Sterling's failure to list the Movant, or

the Movant's predecessor-in-interest, as a secured creditor on his Schedules as highlighting the

bad faith in filing this bankruptcy.

But these allegations are insufficient to satisfy the requirements for *in rem* relief.  Under

Section 362(d)(4), the Court must find that the "*filing of the petition* was part of a scheme to

delay, hinder and defraud" a creditor and that said scheme also included the transfer of properties

without consent.  11 U.S.C. § 362(d)(4) (emphasis added).  The Court has not been provided with

a sufficient evidentiary record at this time to conclude that the bankruptcy filing was intended to

be part of such a scheme.  *See In re PDPA, Inc.*, 2012 U.S. Dist. LEXIS 81907, at *4, *11 (D.

Conn. June 12, 2012) (affirming bankruptcy court that granted *in rem* relief after holding a three

day evidentiary hearing, noting that the bankruptcy judge "had ample record support for such a

finding."); *In re 177 Weston Rd., LLC*, 2011 Bankr. LEXIS 2848, at *5 (in making its ruling

against granting *in rem* relief, court "considered the evidence adduced at trial and assessed the

credibility of the witnesses.")  Several factors present in the case law are missing here.  For

example, courts granting *in rem* relief often note that a transfer of property was made on the eve

of a bankruptcy filing.  *See, e.g., In re PDPA, Inc.*, 2012 U.S. Dist. LEXIS 81907, at *3-4

(property conveyed the same day as the Chapter 11 filing).  By contrast, the transfers of the

properties back to Mr. Sterling took place on November 26, 2013, almost a year prior to the filing

of the bankruptcy case on September 15, 2014, which weighs against a finding of the filing being

part of such a scheme.  Nor does Mr. Sterling's failure to list the Movant or its predecessor-in-

interest as a secured creditor on his Schedules point to intent.  Indeed, the Debtor appears to argue

in his papers that his reason for not doing so was because 222 Funding Associates obtained an

order from the State Court vacating the foreclosure judgment, and because he was unaware of the

assignment of the mortgage to the Movant.  *See* Affidavit in Support of Order to Show Cause for

Preliminary Injunction and Restraining Order at ¶¶ 7-10 [ECF No. 42]; *see also* Affidavit at

Exhibit C, attaching documents pertaining to the request to vacate the State Court judgment.

Furthermore, courts have held that fraud cannot simply be inferred from the fact that a

transfer took place.  Rather, the movant must provide the Court with "evidence that the debtor[],

by the transfer and bankruptcy filing, somehow defrauded or schemed to defraud [the movant]."

*See In re Abdulla*, 2009 Bankr. LEXIS 642, at *3-5 (even where the debtors admitted the transfer

was intended to bring the property into bankruptcy protection, court found that the movant had

not shown debtors' intent was to hinder, delay and defraud the movant and that their actions

constituted a scheme to those ends); *Wells Fargo Bank v. Dilworth*, 2014 U.S. Dist. LEXIS

146933, at *14-16 (E.D. Wis. Oct. 15, 2014) (stating that "standing alone, the fact that a debtor

moved assets from debtor-owned LLCs to the individual debtor prior to the filing for relief

[should] not constitute grounds to grant relief under Section 362(d)(4). . . . [T]hese sorts of

transfers *may* be appropriate[,]" and noting that debtor testified transfers were made on advice of

counsel) (emphasis in original).[6]

In sum, while there are some facts to support a conclusion that the Properties were

transferred with the intent to frustrate the creditor, the Court concludes that *in rem* relief is not

appropriate based upon the incomplete evidentiary record before it.

## II.    Preliminary Injunction Motion

In response to the Lift Stay Motion, Mr. Sterling filed a request for an order to show

cause for a preliminary injunction and temporary restraining order preventing the Lift Stay

Motion from going forward.  [ECF No. 42].  The Court previously denied the order to show

---

[6]    Of course, as these Properties are now assets of the bankruptcy estate, the Debtor is not free to transfer the Properties to another entity without the approval of this Court.  *See, e.g.*, 11 U.S.C. § 363.

cause for temporary relief, concluding that Mr. Sterling had not set forth facts or law to justify

such relief. [ECF No. 43]. It now addresses Mr. Sterling's underlying request for a preliminary

injunction against the Movant and David Carlebach, as the Movant's counsel.

It is well established that "the basis of injunctive relief in the federal courts has always

been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88

(1974) (internal citations and quotations omitted). The Second Circuit has described the test for

injunctive relief as "(a) irreparable harm and (b) either (1) likelihood of success on the merits or

(2) sufficiently serious questions going to the merits to make them a fair ground for litigation and

a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Vantico Holdings S.A. v. Apollo Mgmt.*, 247 F. Supp. 2d 437, 451 (S.D.N.Y. 2003) (quoting *AIM*

*Int'l Trading, LLC v. Valcucine SpA.*, 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002)). "Injunctive

relief 'is an extraordinary and drastic remedy, one that should not be granted unless the movant,

by a clear showing, carries the burden of persuasion.'" *Air Line Pilots Ass'n v. United Air Lines,*

*Inc.*, 2011 WL 4543820, at *1 (E.D.N.Y. Sept. 29, 2011) (quoting *Mazurek v. Armstrong*, 520

U.S. 968, 972 (1997)). In the Second Circuit, all these principles have been reiterated time and

time again, with the Circuit noting the broad level of discretion vested with the trial court in

determining whether the extraordinary remedy of injunctive relief is appropriate. *See Moore v.*

*Consol. Edison Co. of N.Y., Inc.,* 409 F.3d 506, 511 (2d Cir. 2005); *Green Party of N.Y. v. N.Y.*

*State Bd. of Elections,* 389 F.3d 411, 418 (2d Cir. 2004); *Columbia Pictures Indus., Inc. v. Am.*

*Broad. Cos.,* 501 F.2d 894, 897 (2d Cir. 1974). To establish irreparable harm, a movant "must

demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'" *Tucker*

*Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (quoting *Consol. Brands,*

*Inc. v. Mondi*, 638 F. Supp. 152, 155 (E.D.N.Y. 1986)).

The papers filed by Mr. Sterling do not address whether and how he would be harmed by the lifting of the automatic stay.  In any case, the Court does not find any such harm to be actual and imminent.  The Movant does not have a judgment and therefore foreclosure on the Properties would not automatically occur upon the lifting of the automatic stay.  Rather, the parties must first return to the State Court and litigate their rights within the confines of the Foreclosure Action.

Additionally, the Court finds neither a likelihood of success on the merits of the issues raised by Mr. Sterling nor a serious question going to the merits to make them a fair ground for litigation.  Mr. Sterling first argues that the Movant is barred from seeking relief from the automatic stay and from making a claim against the Properties due to the doctrine of laches.  But Mr. Sterling's laches argument appears to confuse the relief sought by the Movant with certain other deadlines imposed under Chapter 7 of the Bankruptcy Code.  Mr. Sterling argues that in September 2014, the Movant received "notice of the [b]ankruptcy action and adequate opportunity to respond and make a claim, and was negligent or intentionally failed to do so." Affidavit in Support of Order to Show Cause for Preliminary Injunction ¶ 2 [ECF No. 42].  As proof of this, Mr. Sterling attaches as Exhibit A to his pleadings a copy of the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines, dated September 15, 2014 [ECF No. 5] (the "Chapter 7 Notice").[7]  Mr. Sterling argues, therefore, that the Movant is "barred from making any equitable claim to the subject property of this action by the doctrine of laches." Affidavit in Support of Order to Show Cause for Preliminary Injunction ¶ 1.

But while it is unclear what Mr. Sterling means by an "equitable claim," Mr. Sterling points to nothing to prevent the Movant from protecting its rights through the Lift Stay Motion

---

[7]      An affidavit of service indicates that the Chapter 7 Notice was not sent to the Movant itself, but rather to 222 Funding Associates, the assignor of the Movant.  [ECF No. 5-1].

and in the bankruptcy.  Indeed, the Court is aware of no such bar.  The Chapter 7 Notice cited by

Mr. Sterling provides no deadline for the filing of proofs of claim, and specifically states that

recipients of the Chapter 7 Notice should not file a proof of claim unless they receive a notice to

do so.  The only deadlines that are actually listed in the Chapter 7 Notice are: (1) a deadline of

December 22, 2014 to object to the Debtor's discharge or challenge dischargeability of certain

debts, and (2) a deadline of 30 days after the conclusion of the meeting of creditors to object to

the Debtor's exemptions.  *See* Chapter 7 Notice at 1.   The Movant has neither sought to

challenge the dischargeability of its debt nor challenge the exemptions taken by Mr. Sterling.[8]

And these deadlines have no bearing on the Movant's Lift Stay Motion and any relief that it may

seek in the State Court with respect to the Properties.

Even if the deadlines set forth by the Chapter 7 Notice were somehow applicable to the

relief that the Movant is seeking—and they are not—Mr. Sterling's argument regarding laches

would still fail.  Laches "is an equitable defense that bars a plaintiff's equitable claim where he is

guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant."

*Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) (internal citations and quotations

omitted).   "The burden is on the party alleging laches (i.e., the Debtor) to establish that defense."

*In re Klinger*, 2007 Bankr. LEXIS 2118, at *14 (Bankr. D. Conn. June 21, 2007).  The party

asserting the defense of laches is required to show that: "(1) the plaintiff knew of the defendant's

misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was

---

[8]       The Office of the United States Trustee has filed an adversary proceeding seeking to deny Mr. Sterling a
Chapter 7 discharge pursuant to Sections 727(a)(3), (a)(5) and (a)(6) of the Bankruptcy Code.  *See* Adv. Pro. No. 15-
01288.  Mr. Sterling has filed a third party complaint in that adversary proceeding against, among others, the
Treasurer of the United States, Mr. Jacob Lew, the United States Trustee, William K. Harrington, the Attorney
General, Lorretta E. Lynch, and the Comptroller of Currency, Thomas J. Curry, as well as Richard Fox, a trial
attorney at the Office of the United States Trustee and Yann Geron, the Chapter 7 Trustee.  The U.S. Attorney for
the Southern District of New York has filed a motion to dismiss Mr. Sterling's third party complaint, and the parties
are in the process of briefing that motion.

prejudiced by the delay." *Ikelionwu*, 150 F.3d at 237.  "The defense of laches is committed to

the sound discretion of the trial court, and the determination is not made upon the application of

'mechanical rules.'"  *Margaret Wendt Found. Holdings, Inc. v. Roycroft Assocs.*, 2007 U.S. Dist.

LEXIS 76429, at *25 (W.D.N.Y. Oct. 11, 2007) (quoting *A.C. Aukerman v. R.L. Chaides Constr.

Co.*, 960 F.2d, 1020, 1032 (Fed. Cir. 1992)); *see also Tri-Star Pictures v. Leisure Time Prods.,

B.V.*, 17 F.3d 38, 44 (2d Cir. 1994).  "[A] court must consider the facts and circumstances of the

particular case at hand and weigh the equities of the parties in determining whether a claim is

barred by laches."  *Shiotani v. Walters*, 2012 U.S. Dist. LEXIS 175464, at *16 (S.D.N.Y. Dec. 4,

2012).

        In these circumstances, Mr. Sterling can show neither inexcusable delay, nor that he was

prejudiced by the delay.  To begin with, nothing in the Bankruptcy Code requires that a lift stay

motion be filed for a secured creditor to maintain its rights.  *See Astra USA v. Bildman*, 375 F.

App'x 129, 133 (2d Cir. 2010) ("[T]he doctrine of laches, unlike a statute of limitations, does not

depend on whether a certain definite time has elapsed since the cause of action accrued, but

whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of

due diligence in asserting its rights.") (internal citations and quotations omitted).  And for the

same reasons discussed above, Mr. Sterling has not been prejudiced by any time that has passed

since the filing of the bankruptcy case.  His rights with respect to the Properties have not been

impaired by the passage of time since the filing.  In fact, the opposite is true.  During this time,

Mr. Sterling has benefitted from the automatic stay, which is the only thing that has prevented

the Foreclosure Action from proceeding.  With the Lift Stay Motion granted, Mr. Sterling will

simply have to return to the State Court and defend himself in the Foreclosure Action.  Even if so

much time had passed that Mr. Sterling had received a bankruptcy discharge, Section 524(a) of

the Bankruptcy Code "bars only 'acts or actions to collect a discharged debt "as a personal

liability." This provision does not prevent foreclosure of a lien on property.'" *Knox v.

Countrywide Bank*, 2015 U.S. Dist. LEXIS 120052, at *23 (E.D.N.Y. July 29, 2015) (quoting *In

re Wilson*, 492 B.R. 691, 696 (Bankr. S.D.N.Y. 2013)). "Thus, while [a Debtor's] personal

obligations were discharged, 'a valid mortgage lien survives the bankruptcy. . . .'" *Knox*, 2015

U.S. Dist. LEXIS 120052, at *23 (quoting *Drew v. Chase Manhattan Bank*, 185 B.R. 139, 142

(S.D.N.Y. 1995)).

　　　Mr. Sterling next argues that he has transferred all his property to the United States of

America, pursuant to 12 U.S.C. § 95a(2), which he believes thwarts the Movant's rights here.

The statute provides:

> Any payment, conveyance, transfer, assignment, or delivery of property or
> interest therein, made to or for the account of the United States, or as otherwise
> directed, pursuant to this section or any rule, regulation, instruction, or direction
> issued hereunder shall to the extent thereof be a full acquittance and discharge for
> all purposes of the obligation of the person making the same; and no person shall
> be held liable in any court for or in respect to anything done or omitted in good
> faith in connection with the administration of, or in pursuance of and in reliance
> on, this section, or any rule, regulation, instruction, or direction issued hereunder.

12 U.S.C. § 95a(2). As "proof" of his transfer of these Properties to the United States, Mr.

Sterling attaches various documents and UCC filings that he has prepared, recorded and

published, each referencing 12 U.S.C. § 95a(2) and stating that he has assigned "all property

bearing the title Everton Aloysius Sterling and Latou Realty Corp. to the United States of

America and all the reversionary interest thereof." *See* Exhibit D to Preliminary Injunction

Motion. But the statute Mr. Sterling cites does not apply here. It must be read within the context

of the entire statute, which is entitled "Regulation of transactions in foreign exchange of gold and

silver; property transfers; vested interests, enforcement and penalties" and which "allows the

President of the United States to regulate or prohibit the hoarding of, or transfer to foreign

nationals of, currency and certain securities and commodities, such as gold and silver bullion."
*U.S. v. Rivera*, 2015 WL 4042197, at *23 (D. N.M. June 30, 2015); *see also Whitfield v. Lopez*,
2015 WL 6128866, at *4 (E.D.N.Y. Oct. 16, 2015) (noting that 12 U.S.C. § 95a(2) "authorize[s]
the President of the United States to regulate foreign transactions during wartime"). "Subsection
(2) indemnifies citizens who comply with subsection (1) and clarifies that the United States must
repay the value of anything turned over to it under subsection (1)." *Rivera*, 2015 WL 4042197,
at *23. Thus, subsection 2 contains language associating it with actions specifically taken by the
United States pursuant to the statute. *See* 12 U.S.C. 95a(2) ("Any payment, conveyance,
transfer, assignment, or delivery of property or interest therein, made to or for the account of the
United States, or as otherwise directed, *pursuant to this section* or any rule, regulation,
instruction, or direction *issued hereunder. . . .*") (emphasis added). The alleged conveyances that
Mr. Sterling claims to have made are clearly not related to the President's wartime powers to
investigate or regulate transactions and have no bearing on the Movant's Lift Stay Motion before
this Court. Moreover, Mr. Sterling has presented no evidence to support the application of this
statute here. *See, e.g., Whitfield*, 2015 WL 6128866, at *4 (noting that plaintiff did not have a
private right of action under 12 U.S.C. § 95a(2) and dismissing that portion of the complaint as
frivolous).[9]

---

[9]    The Court set a deadline of November 18, 2015 for Mr. Sterling to file a reply to his Preliminary Injunction
Motion. *See Order Adjourning Hearing* [ECF No. 52]. On that date, Mr. Sterling filed a pleading styled as a
*Motion for Declaratory Relief With Request for Preliminary Injunction and For an Opportunity to Conduct
Discovery Pursuant to 28 U.S.C. §§ 2201, 2202, FRCP Rule 57 & FRCP Rules 26-37* [ECF No. 59]. This pleading
requested the same relief as the Preliminary Injunction Motion and the Motion to Strike, specifically that the Lift
Stay Motion be denied and that a preliminary injunction be put in place against the Movant and Mr. Sterling be
granted discovery. Because of this, the Court considers this pleading as a reply to the Preliminary Injunction
Motion.

The Court notes that this reply raised new legal arguments. These new legal arguments include, but are not
limited to, equitable tolling, the Clearfield Doctrine, the Organic Act of 1871, and failure to comply with the Fair
Debt Collection Practices Act. All arguments raised by Mr. Sterling that are not specifically addressed in this
decision are denied as lacking a basis in fact and law and because they constitute new arguments raised for the first
time in a reply. *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised

## CONCLUSION

For the reasons set forth above, the Movant's request to lift the automatic stay is granted and the request for *in rem* relief is denied.  Mr. Sterling's request for injunctive relief is denied in its entirety.

IT IS SO ORDERED.

Dated: New York, New York
       December 22, 2015

                                                        */s/ Sean H. Lane*
                                                        UNITED STATES BANKRUPTCY JUDGE

---

for the first time in a reply brief."); *In re Motors Liquidation Co.*, 2015 U.S. Dist. LEXIS 114043, at *22 n.4 (S.D.N.Y. Aug. 27, 2015) ("[I]ssues raised for the first time in a reply brief are generally deemed waived.") (quoting *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010)).  Moreover, many of these arguments are similar to arguments raised by proponents of the sovereign citizen movement who believe they are not subject to federal or state statutes or proceedings and place special significance on commercial law.  *See, e.g., United States v. Harding*, 2013 U.S. Dist. LEXIS 62471, *3-6 (W.D. Va. May 1, 2013).  Such arguments have been uniformly rejected by the courts.  *See id.*

Finally, Mr. Sterling raises two last arguments worthy of comment, even if untimely raised.  First, he contends that the Lift Stay Motion is a non-core matter and that he does not consent to the entry of a final judgment by this Court.  *See* ECF No. 59 at 10.  The Court rejects this argument, as core proceedings specifically include "motions to terminate, annul, or modify the automatic stay." 28 U.S.C. §157(b)(2)(G).  Second, Mr. Sterling argues that 222 Funding Associates "did not exist as a legal entity authorized to do business in the State of New York" and that any contract entered into by 222 Funding was therefore invalid.  *See* ECF No. 59 at 5-6.  As proof of this assertion, Mr. Sterling attaches a response from the New York State Department of Financial Services to a Freedom of Information Law request for "documents showing that 222 Funding Associates is licensed or registered to conduct mortgage business in NY State."  *See* Ex. D to ECF No. 59.  In response, the Department of Finance provided a letter dated November 2, 2015 on which a box was checked stating that "the Department does not have any of the records requested" and further providing that "222 Funding Associates is not licensed by the Department to do mortgage banking, mortgage brokerage or mortgage servicing."  *See id*.  Given that the Movant is 1279 St. John's Place LLC—and not 222 Funding—it is unclear how this document is relevant to the issues currently before the Court.  In any event, this letter does not demonstrate that the contract was invalid.  It does not establish whether 222 Funding Associates had authority to act in the past, including when it held the Note before the Note was transferred to 1279 St. John's Place LLC.  It also does not address any authority 222 Funding Associates might have to act through an affiliated company.